CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

7/7/2026

LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| 3210 MAIN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-00153 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ERIE INSURANCE COMPANY, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

This insurance-coverage dispute is before the court on the parties' cross-motions for partial summary judgment. (ECF Nos. 17 & 20.) While the court appreciates the parties' efforts to seek an early resolution of Plaintiff 3210 Main, LLC's claims, myriad material—and as-yet-to-be-determined—facts make a dispositive legal ruling impossible at this early stage. The parties must complete discovery to address the threshold factual questions identified by the court below.[1] Accordingly, their cross-motions will be denied.

## I.   STATEMENT OF FACTS

Plaintiff 3210 Main, LLC ("3210 Main") owns real property located at 3210 South Main Street in the City of Harrisonburg, Virginia (the "3210 Main Property"), "on which it currently operates a motel." (Am Compl. ¶¶ 1, 6 [ECF No. 16].) Belle Meade, LLC ("Belle Meade") "is the entity through which the motel operates." (*Id.* ¶ 7.) Defendant Erie Insurance Company ("Erie") issued a commercial general liability insurance policy (the "Policy" or the "Erie

---

[1] Although certainly not dispositive, in response to the cross-motions for summary judgment, *both* sides contend that material factual disputes preclude summary judgment for their opponent but aver that there are no material factual disputes with regard to *their* motion.

Policy"), effective December 2, 2021, to December 2, 2022, to Belle Meade as the Named Insured. (*Id.* ¶ 10, Ex. A.) The Policy lists "3210 S. Main LLC"—rather than 3210 Main, LLC, the actual name of the company—as the Additional Insured in its Declarations section. (*Id.* ¶ 11, Ex. A at 8.)

In 2022, 3210 Main hired an engineer and contractor to design and install a sewer line on the property for the motel Belle Meade operated. (*Id.* ¶ 16.) The excavation work purportedly caused damage to the property adjacent to the 3210 Main Property, owned by Vincenzo Dattolo, resulting in a dispute between Dattolo and 3210 Main. (*See id.*) In March 2024, 3210 Main informed Valley Trust Insurance Group—the agency that sold it the Erie Policy—of a potential claim that could arise from the dispute with Dattolo.[2] (*Id.* ¶ 19.) Then, on July 16, 2024, Dattolo filed suit in the Circuit Court of Rockingham County against 3210 Main ("Dattolo lawsuit"). (*Id.* ¶¶ 14, 16.)[3]  In April 2025—approximately three months before trial—3210 Main informed Erie of the dispute with Dattolo. (*Id.* ¶ 20.)

On May 6, 2025, Philip Haugh, Jr., Senior Commercial Claims and Litigation Specialist with Erie, informed counsel for 3210 Main via letter that Erie would not insure 3210 Main because there was no contract between Belle Meade and 3210 Main, and because 3210 Main was not listed as an Additional Insured in the Policy. (*Id.* ¶ 24, Ex. C.) Counsel for 3210 Main sent a letter to Erie on June 6, 2025, asking it to reconsider its denial of coverage, explaining that the listing of "3210 S. Main, LLC" was a scrivener's error because such an entity does not

---

[2] It is unclear whether Erie disputes (a) whether this notice occurred, (b) whether the notice was sufficient, (c) both, or (d) neither.

[3] Ultimately, the Circuit Court for Rockingham County held a trial on July 24 and 25, 2025, and found that 3210 Main was not liable for trespass. (Am. Compl. ¶ 17.) Dattolo did not file a Notice of Appeal. (*Id.* ¶ 18.)

exist, and, therefore, the intent was for 3210 Main, LLC to be named as the Additional Insured. (*Id.* ¶ 25, Ex. D.) Erie continued to decline coverage via phone calls, and on August 22, 2025, counsel for 3210 Main again requested via letter that Erie reconsider its position, arguing that there is a common ownership between Belle Meade and 3210 Main and that 3210 Main, LLC was the intended Additional Insured, despite the mistake in the insurance contract. (*Id.* ¶ 28–29, Ex. F.) Erie nevertheless declined to pay the costs incurred by 3210 Main throughout the Dattolo lawsuit. (*Id.* ¶ 30.)

On November 17, 2025, 3210 Main sued Erie in Virginia state court for refusing to defend it during the Dattolo lawsuit, and on December 30, Erie removed the suit to this court. (*See* Not. Removal [ECF No. 1].) 3210 Main filed an amended complaint on March 4, 2026, asserting two claims against Erie: breach of contract (Count I) and reformation (Count II). On March 10, 2026, both 3210 Main and Erie filed respective motions for summary judgment. (ECF Nos. 17, 20.) Both motions have been fully briefed, and they are therefore ripe for resolution.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322 (quoting former Fed. R. Civ. P. 56(c)). Whether a fact is material depends on the relevant substantive

law. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries its burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (cleaned up) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. But the nonmoving party must "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp.*

*v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rts. Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not . . . to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. Nat'l Cable Adv., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995). "The question at the summary judgment stage is not whether a jury is *sure* to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

## III.   DISCUSSION

While this case may seem straight-forward, there are a number of material, unanswered questions that the court believes precludes summary judgment at this stage.

First, as a threshold matter, the parties cannot agree on whether 3210 Main was an "additional insured" under the policy.[4] Was the Policy retroactively amended (as represented in the Amended Complaint) to add 3210 Main to the relevant Schedule, or not? If not, did the agent who issued the Policy understand that, at the time the Policy was issued, Belle Meade intended 3210 Main (as opposed to 3210 S Main LLC, which is not a legal entity) to be an additional insured? At this stage, the court is left to guess. And given that the primary issue in

---

[4] Erie contends that the point *is* immaterial, as it contends that even if 3210 Main was an additional insured, coverage would not be available to it under the terms of the Policy. But the court is not so sure. Erie's interpretation of the Policy language appears to the court to be too narrow, especially considering that it drafted the Policy. Moreover, other unanswered questions, if resolved in 3210 Main's favor (such as the nature of any contractual relationship between 3210 Main and Belle Meade, *see infra* p. 6), would undercut Erie's argument.

this case is whether 3210 Main is entitled to coverage under Belle Meade's insurance policy, these questions are not immaterial.

Second, what was the legal relationship between Belle Meade and 3210 Main? In its complaint, 3210 Main contends that Erie denied it coverage because "there was no contract between 3210 Main and Belle Meade" (Am. Compl. ¶ 28), but 3210 Main contends there *was* a lease agreement, operating month-to-month, between the parties (*see* Pl.'s Br. in Opp. to Def.'s Mot. for Partial Summ. J at 3 [ECF No. 24]). If so, what were the terms of that lease agreement, and are they relevant to the present dispute? In other words, what *contractual obligations* existed between 3210 Main and Belle Meade? And in hiring a contractor to install the sewer line, was 3210 Main acting pursuant to its contractual obligations?

Relatedly, in hiring the contractor to install a sewer line, was 3210 Main acting "on behalf of" Belle Meade? And were they operating the motel jointly, as the Amended Complaint seems to allege? (*See* Am. Compl. ¶¶ 6–7 (alleging that 3210 Main owns the property "on which it currently operates a motel" and that Belle Meade "is the entity through which the motel operates").) This question also implicates the court's primary concern: Was 3210 Main an "additional insured" under the Policy? After all, under the terms of the Policy, an "additional insured" is covered by the Policy if they are "shown in the Schedule, but only with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by . . . [t]he acts or omissions of those acting on your behalf[] in the performance of your ongoing operations for the additional insured(s) at the location(s) designated" in the Policy. (*Id.* Ex. A at 20.)

The court is also cognizant of several fact-specific defenses, namely Erie's claim of delay in notification, and 3210 Main's claims of waiver and estoppel of those defenses.[5] It is well-settled that a requirement of "timely notice of an accident or occurrence is a condition precedent to an insurance company's liability coverage requiring 'substantial compliance by the insured.'" *State Farm Fire & Cas. Co. v. Walton,* 423 S.E.2d 188, 192 (Va. 1992) (quoting *Liberty Mut. Ins. Co. v. Safeco Ins. Co. of Am.,* 288 S.E.2d 469, 473 (Va. 1982)).

> "Virginia law does not require that an insurance company be prejudiced by the delay in notification; a prolonged delay in notification alone may breach the policy even absent a showing of prejudice." *Penn–America Ins. Co. v. Mapp,* 461 F. Supp. 2d 442, 452 (E.D. Va. 2006) (citing *Walton,* 423 S.E.2d at 192). "[I]n order for untimely notification to constitute a breach the policy, such that the insurer no longer bears the duty to defend the insured, the failure to notify must be substantial and material." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Porter,* 272 S.E.2d 196, 198–99 (Va. 1980)). Three factors bear upon the materiality of a breach of the notice provision of a policy: "(1) the reasonableness of the delayed notice, (2) the amount of prejudice suffered by the insurer as a result of the delay, and (3) the length of time that elapsed before notice was given." *Id.* (citing *North River Ins. Co. v. Gourdine,* 135 S.E.2d 120, 123–24 (Va. 1964); *Walton,* 423 S.E.2d at 192).

*State Farm Fire & Cas. Co. v. Wallace*, 997 F. Supp. 2d 439, 446–47 (W.D. Va. 2014). "[T]he question of delayed notice may be decided as a matter of law where reasonable men could not differ as to the inferences to be drawn from the undisputed facts." *Atlas Ins. Co. v. Chapman*, 888 F. Supp. 742, 745 (E.D. Va. 1995), *aff'd,* 92 F.3d 1176 (4th Cir. 1996).

But unknown, and potentially disputed, material facts preclude a finding on this question at this time—namely, was 3210 Main an additional insured under the Policy? As 3210

---

[5] As noted *supra* n.2, the court is unclear whether the relevant, material facts are disputed.

Main tells it, Erie's position that 3210 Main was not an additional insured was the sole basis for denying the claim. But if it turns out that that's not true, then was the delay in notice "material" and "substantial"? After all, "notice provisions are designed to afford the insurer the opportunity to make a timely investigation of all circumstances surrounding the accident and to prepare an adequate defense if necessary on behalf of the insured." *Id.* at 745. If Erie's defense was "3210 Main is not covered by the Policy," no investigation of the claim would have been necessary, and thus any claim that the delayed notice was "material" and "substantial" would be a hard sell.

Finally, Erie contends that, under the "eight-corners rule," regardless of whether 3210 Main was an insured or not, it had no legal obligation to defend it, and thus this case should end at its start. Under Virginia law, "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012). "This principle is commonly referred to as the 'eight[-]corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." *Id.* "[A]n insurer's duty to defend . . . is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265–66 (Va. 1996). "On the other hand, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend."

*AES Corp.*, 725 S.E.2d at 535–36 (citing *Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978)).

Here, for many of the reasons discussed above, the court cannot say, as a matter of law, that the Dattolo lawsuit—brief and curt in its allegations—could not possibly have triggered the coverage provided by the Policy.[6] At its most basic, if 3210 Main was an additional insured, and if it was acting "on behalf of" Belle Meade, then the Policy was likely implicated. In other words, the eight corners of the Dattolo lawsuit and the Policy do not preclude such a theory of recovery, at least as far as the court can tell based on the limited information available to it at this early stage.

All of this is to say that, while it may seem at first blush that only the insurance contract controls the outcome of this dispute, the court is not convinced that is, in fact, the case. Accordingly, the parties should flesh out the core facts and the various legal relationships during fulsome discovery. Once that work has been completed, and the deadline for completing discovery has passed, the court will entertain renewed motions for summary judgment.[7] But at this time, summary judgment is premature.

---

[6] As noted, even under this theory, perhaps coverage could have been denied if it was shown that 3210 Main was not acting "on behalf of" Belle Meade in hiring the contractor to install the sewer line. But that potentiality isn't self-evident from the eight corners of the Policy and the Dattolo lawsuit, so the duty to defend, under this narrow scenario, might very well not include a duty to pay. *See, e.g.*, *Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 813–14 (W.D. Va. 2013) (noting that an insurer may not "rely on extrinsic evidence to deny the insured a defense"); *Glob. Title, LLC v. St. Paul Fire & Marine Ins. Co.*, 788 F. Supp. 2d, 453, 461 (E.D. Va. 2011) (similar).

[7] In so doing, the parties should not refile their original summary judgment briefs, but tailor and refine their legal arguments based on the additional facts learned during discovery (and the questions raised by the court in this opinion).

## IV.    CONCLUSION

For the foregoing reasons, the parties' cross motions for summary judgment will be denied without prejudice.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 7th day of July, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE